# EXHIBIT A

03/01/2010  14:10 FAX  4405468G                    PNC_BANK                                            ☑ 003/033

Approved, SCAO

| | Original - Court | 2nd copy - Plaintiff |
| | 1st copy - Defendant | 3rd copy - |

| STATE OF MICHIGAN | | | OAKLAND COUNTY **10-107261-CK** |
| JUDICIAL DISTRICT | **SUMMONS AND COMPLAINT** | |
| JUDICIAL CIRCUIT | | JUDGE WENDY L. POTTS |
| COUNTY PROBATE | | SEMAN,ANWAR  v  NATIONAL CITY  one no. |

Court address

_[handwritten]_

Plaintiff's name(s), address(es), and telephone no(s).

_[handwritten]_

v

Defendant's name(s), address(es), and telephone no(s).

_[handwritten]_

Plaintiff's attorney, bar no., address, and telephone no.

_[handwritten]_

**SUMMONS**   **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file a **written answer** with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued **JAN 2 6 2010** | This summons expires **APR 2 6 2010** | Court clerk **RUTH JOHNSON** |

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

**COMPLAINT**   _Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form._

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |

**General Civil Cases**
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |

**VENUE**
| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
| Place where action arose or business conducted | |

Date _[handwritten]_                                   Signature of attorney/plaintiff _[handwritten]_

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01  (3/08)  **SUMMONS AND COMPLAINT**  MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

DEFENDANT

3964586313438

STATE OF MICHIGAN
SIXTH CIRCUIT COURT
OAKLAND COUNTY

ANWAR SEMAN,

       Plaintiff,

       Case No.
       Hon.

–vs–

OAKLAND COUNTY **10-107261-CK**

JUDGE WENDY L. POTTS
SEMAN,ANWAR  v  NATIONAL CITY

NATIONAL CITY HOME EQUITY, a Foreign Corporation,
WASHINGTON MUTUAL BANK, a
foreign corporation,
CHASE HOME FINANCE LLC, a Foreign Corporation,
APEXMORTGAGE,aMichiganCorporation
Defendants.
_____
Michael Reynolds (P28540)
Law Offices of Michael Reynolds
Attorney for Plaintiff
24624 Hathaway Street
Farmington Hills, MI 48335
 (248)536-5030

RECEIVED FOR FILING
OAKLAND COUNTY CLERK
2010 JAN 26  PM 1:25
DEPUTY COUNTY CLERK

---

## REQUIRED STATEMENT

       There is no other civil action arising out of the same transaction or occurrence as alleged in this Complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.

                    Michael Reynolds (P28540)

## VERIFIED COMPLAINT

    NOW COMES the Plaintiff herein,  Anwar Seman by his attorney and for their

Complaint respectfully represents unto this Honorable Court as follows:

1.    Plaintiff  and Defendant Apex Mortgage are is a residents of Oakland County,

      State of Michigan.

2.    Defendant National City Home Equity, LLC, (hereinafter National), and

      Washington Mutual Bank, are  Foreign Corporations,  registered and conducting

      business in Oakland County, State of Michigan.

3.     Defendant Washington Mutual Bank, (hereinafter Wamu), is a Foreign

Corporation, that was acquired by Defendant Chase Home Finance, (hereinafter

Chase), a Foreign Corporation that is registered and conducting business in

Oakland County, State of Michigan..

## JURISDICTION

4.     Jurisdiction is proper in that the amount in controversy is in excess of $25,000.00

and this is an equitable proceeding involving land located in this jurisdiction

## FACTS

5.     On or about October 6th, 2006 and again on June 7th, 2007, Plaintiff executed a 1st

mortgage with Wama in the amount of $       . recorded in Liber    ,

Page    and a 2nd Mortgage with National in the amount of $     at

Oakland County Records for property commonly known as 6972 Apple Blossom

Trail, West Bloomfield, , MI 48322. .

6.     Plaintiff's loan was originated by Apex Mortgage which inflated various figures

on the original loan application including but not limited to: (a) inflated income,

(b) understated expenses, understated liabilities, understated debt to income ratio

and other non-disclosed items as required by Federal law. This included closing

fees in the amount of $13,400.00 that was never properly disclosed to the

Borrower. Furthermore Plaintiff's actual monthly income at the time was

$6,200.62, however the application as subitted by Defendant's agent shows a

monthly income of $22,000.00 and understated the expenses which resulted in a

non-affordable loan.

7.    While at the closing, Plaintiff was not informed of various charges that later were

to be assesses against him, he was never advised of the nature of the variable rate

loan, he was never advised of his recision rights, he was never advised of the split

charges and excess interest rate differentials split between the broker and the

original lender, he was not informed of various costs that were over inflated as

shown on the HUD settlement statement including: origination fees, appraisal

fees, Document preparation fees,  broker processing fees  lender underwriting

fees, and a   yield to premium adjustment. .Furthermore, the Plaintiff was

discriminated against by taking members of his class and applying for non-

affordable loans from on application that falsely used inflated income to conceal a

higher debt to income ratio.

8.    Later, Plaintiff's billing was sent with outrageous charges that were never

disclosed and deductions from payments were made in a manner that kept adding

on various late charges and other costs.

9.    Plaintiff never fell behind in his payments but is having difficulty paying the

mortgage currently.

10.   Plaintiff then had an agent send in a qualified written request, (QWR), issued

under the RESPA act, see attached exhibit 1.

11.   On September 9, 2009 Plaintiff's agent sent to Wamu and to various federal

agencies complaining of discriminatory practices under The Federal Fair Housing

Act.

## COUNT I

## DECLARATORY RELIEF THAT THE NAMED DEFENDANTS

## ARE NOT HOLDERS OF THE MORTGAGE NOTE AND THEREFORE THE DEBT

## AND MORTGAGE IS NULL AND VOID

12.    Plaintiff adopts by reference the preceding paragraphs.

13.    MCL 440.3205(3) states: "....An obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument."

Upon information received, Defendants are not the owner and possessors of the Mortgage note.

14.    On information and belief Defendant does not have the original  executed mortgage note.

15.    Due to the lack of ownership of the Note or the Mortgage by  Defendants, THEY DOE NOT HAVE THE LEGAL STANDING TO CONTINUE TO COLLECT ON THE MORTGAGE OR ITS NOTE.

WHEREFORE, Plaintiff requests this Honorable Court  for declaratory relief that:

1.    Defendants are  not the owners of the alleged Mortgage Note;

2.    Allow for a recission of contract.

## COUNT II

## QUIET TITLE RELIEF AS TO DEFENDANTS

16      Plaintiff adopts by reference the preceding paragraphs.

17.     Plaintiffs are at all times the fee owners and in possession of the above described

property.


18.     That the claim of Defendants is invalid due to the following:

       a.      The Defendants are not a holders of the original Mortgage Note as

defined by the laws of the State of Michigan.

       b.      Defendants engaged in fraudulent activity in closing the mortgage

with excessive interest rate charges and other costs.

       c.      The Defendant Wamu with its agents and originators conspired in

creating a false mortgage loan application and fraudulent closing charges.

       d..     Since Defendants are not the owner of a mortgage note, they do not

have standing to enforce the lien on Plaintiff's property.

       e.      Since the mortgages were obtained under fraudulent

representations that Defendants knew were fraudulent, they cannot

proceed to collect on the note in question and the mortgage is therefore a

cloud upon Plaintiffs' title.


WHEREFORE, Plaintiff requests that:

    1.      The Mortgage be declared illegal and void.

    2.      Defendants have no standing to foreclose and be ordered to release to

5

Plaintiffs all right, title and interest which Defendants claim, or appears to have in the above described land by reason of their claimed promissory note and mortgage by order of this court in recordable form.

3.      Plaintiff has any other relief agreeable to equity or at law.


## COUNT III

## CIVIL CONSPIRACY

19.    Plaintiff adopts by reference the preceding paragraphs.

20.    Defendants  National , Wamu and Apex as a loan Servicesr and as the original lender  has committed the following acts and practices:

1.      Overcharging Plaintiff's account on service fees;

2.      Overcharging Plaintiff's account on late fees and escrow fees;

3.      Plaintiff was never advised of the nature of the variable rate loan, he was never advised of his recission rights, he was never advised of the split charges and excess interest rate differentials split between the broker and the original lender, he was not informed of various costs that were over inflated as shown on the HUD settlement statement including: origination fees, appraisal fees, Document preparation fees,  broker processing fees  lender underwriting fees, and a  yield to premium adjustment  fee.

4.      Harassment by the use of U.S. Mail to extort fees and escrow amounts in excess of any contractual agreement;

5.      Use of U.S. Mail to extort excessive fees that resulted in Plaintiff's

6

continued classification in default status thereby impairing their credit and resulting in additional late charges;

6.      Conspiring with Defendants to lien Plaintiff's property through the use of Conversion and Fraud.


21.    That Defendants have a pattern and practice of using the U.S. Mail to defraud property owners out of their property by assessing bogus charges beyond their contractual amounts and then foreclosing on their property.

22.    That in committing the above acts, the above named Defendants have conspired to violate state law by committing the above acts.

23.    That the above acts were fraudulent in that Defendants had actual knowledge that the above mentioned fees were false.

24.    That the above Defendants intended to defraud Plaintiffs out of their property by the use of the above acts through their common enterprise.

WHEREFORE, Plaintiff demands that Defendants be ordered and directed to render a complete accounting of all funds received and/or disbursed, with respect to which the Plaintiffs have an interest, and judgment be entered against the said Defendants, for the amount of damages incurred by the Plaintiff as a result of the aforesaid scheme to defraud, the costs of this suit, including reasonable attorneys' fees, and such further relief as the Court shall deem just and appropriate.


## COUNT IV

## FRAUDULENT MISREPRESENTATION

25.   Plaintiff adopts by reference the preceding paragraphs.

26.   Defendants intentionally made false representations of material facts by sending
      out false statements with excessive charges, interest rates, and excessive escrow
      amounts which forced Plaintiff into foreclosure.

27.   Plaintiff's loan was originated by Defendants agent who inflated various figures
      on the original loan application including but not limited to: (a) inflated income,
      (b) understated expenses, understated liabilities, understated debt to income ratio
      and other non-disclosed items as required by Federal law.

28.   While at the closing, Plaintiff was not informed of various charges that later were
      to be assessed against him, he was never advised of the nature of the variable rate
      loan, he was never advised of his recission rights, he was never advised of the
      split charges and excess interest rate differentials split between the broker and the
      original lender, he was not informed of various costs that were over inflated as
      shown on the HUD settlement statement including: origination fees, appraisal
      fees, Document preparation fees, broker processing fees lender underwriting
      fees, and a yield to premium adjustment fee to name a few.

29.   Defendant's representations were false when they were made.

30.   Defendant knew that its representations were false when they were made or it
      made them recklessly, without knowing whether they were true.

31.   Defendant intended that Plaintiff relied on the representations.

32.   Plaintiff relied on Defendant's false representations.

33.   As a result of Defendant's fraudulent misrepresentations, Plaintiff has suffered
      substantial economic losses.

8

WHEREFORE, Plaintiff requests that this court enter a judgment in their

favor and against Defendant and award the following damages:

1.  Compensatory damages in an amount that is in excess of $25,000 and that is

    sufficient to compensate Plaintiff for actual, consequential, and incidental losses

    sustained as a result of Defendant's wrongful actions

2.  Exemplary damages in an amount in excess of $25,000 resulting from Defendant's

    intentional and malicious actions

3.  Interest, costs, and reasonable attorney fees

### COUNT V

### FRAUDULENT CONVERSION

34.  Plaintiff adopts by reference the preceding paragraphs.

35.  As a result of the above illegal acts taken by all the named Defendants, they have

     attempted to deprive Plaintiff of their property through illegal charges and the

     issuance of a mortgage lien on the property.

36.  That the attempted deprivation of property rights was accomplished knowingly

     and with intent to wrongfully deprive Plaintiff of their residence.

37.  The acts described above constitute an unlawful conversion of Plaintiff's property,

     resulting in damages to Plaintiff in the amount in excess of $25,000.

     WHEREFORE, Plaintiff requests that this court enter judgment against

     Defendants in the amount including , ( treble damages),  plus interest, costs,

     attorney fees, and any other relief that the court may deem appropriate under the

     circumstances.

## COUNT VI

### PROMISSORY ESTOPPEL

38.    Plaintiff adopts by reference the preceding paragraphs.

39.    Defendant's promise was clear, definite, and unequivocal and was specifically

made to induce Plaintiff into a mortgage that he believed he could afford .

40.    In reliance on the promise, and to his substantial detriment, Plaintiff closed on his

mortgage..

41.    Despite Plaintiff's repeated requests and demands, Defendant has refused to

negotiate a resolution.

42.    To avoid injustice, this court must specifically enforce Defendant's promise to

Plaintiff to negotiate a modification or other equitable relief.

43.    At the time of making the promise and inducing the action on Plaintiff's part,

Defendant could reasonably foresee that his failure to perform pursuant to the

promise would cause the damages Plaintiff has suffered.

44.    As a direct and proximate result of Defendant's failure to perform, Plaintiff has

suffered damages in excess of $25,000.

45.    Plaintiff is entitled to a judgment of this court compelling  performance by

Defendant to transfer back title to his property wrongfully taken.


WHEREFORE, Plaintiff requests that:

1.     The Mortgage be declared illegal and void.

2.     Defendants have no standing to foreclose and be ordered to release to

10

Plaintiffs all right, title and interest which Defendants claim, or appears to have in the above described land by reason of their claimed promissory note and mortgage by order of this court in recordable form.

3.      Plaintiff has any other relief agreeable to equity or at law.


## COUNT VII

### BREACH OF CONTRACT

46.   Plaintiff adopts by reference the preceding paragraphs.

47.   Plaintiff entered into a contract with Wamu and National originally.

48.   Defendants through their mortgage servicing department began to assess excessive interest rate charges beyond the contractual amount allowed.

49.   Defendants continued to assess illegal escrow fees, penalties, interest and other illegal charges beyond what was allowed for in the original contract.

50.   Defendant's conduct as described in this complaint constituted a breach of the contract between the parties.

51.   Plaintiff has been damaged by Defendant's breach in the amount of in excess of $25,000.00.

52    Plaintiff is being illegally subjected to pay a fraudulently obtained lien on his property  and is being charged illegal and predatory court costs and related fees and attorney fees along with having their credit slandered.

WHEREFORE Plaintiff requests that this court enter judgment in their favor and against Defendant in the amount of $25,000.00 plus interest at the statutory rate from the date of filing and that the court grant them such other and

different relief as the court deems warranted.

## COUNT VIII

## VIOLATION OF REAL ESTATE SETTLEMENT

## PROCEDURES ACT 12 USC 2605 BY DEFENDANTS

53.   Plaintiff adopts by reference the preceding paragraphs.

54.   Defendants are servicers of a federally related mortgage loan within the meaning
      of the Real Estate Settlement Procedures Act (RESPA), 12 USC Section 2605.

55.   Prior to the filing of this lawsuit, the Plaintiffs served upon Defendants a
      Qualified Written Request pursuant to the Real Estate Settlement Procedures Act
      ("RESPA"). A copy of the Qualified Written Request sent to Plaintiff is attached
      hereto as Exhibit "A".

56.   United States Code, Title 12, Chapter 27, Section 2601(a) (also known as RESPA
      Section 2), states, "[t]he Congress finds that significant reforms in the real estate
      settlement process are needed to insure that consumers throughout the Nation are
      provided with greater and more timely information on the nature and costs of the
      settlement process and are protected from unnecessarily high settlement charges
      caused by certain abusive practices that have developed in some areas of the
      country.

57.   United States Code, Title 12, Chapter 27, Section 2605 (also known as RESPA
      Section 6), If a borrower sends a qualified written request to his loan servicer
      concerning the servicing of the loan, the servicer must provide a written
      acknowledgment within 20 business days of receipt of the request.

58.   Further, no later than 60 business days after receiving the request, the servicer

must make any appropriate corrections to the borrower's account, and must provide a written clarification regarding any dispute.

59.     Additionally, during this 60-day period, the servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

60..    The 60 days afforded to the loan servicer to respond to a qualified written request under RESPA ended on July 6,2009.  The servicer did not comply within the 60-day period, so a complaint has been filed with the federal regulators for investigation.

61.     As the rule requires that a loan servicer, during the 60 day period, may not provide information to a consumer reporting agency concerning any overdue payment related to the qualified written request, the rule should extend to the bringing of a lawsuit related to the mortgage at issue in the qualified written request.

62.     Each of Plaintiff's written requests for information about their account and corrections of Defendant's  numerous errors were qualified written requests within the meaning of RESPA.

63.     Defendants failed to respond in a proper and timely manner to Plaintiff's written request for validation and correction of their account in violation of 12 USC Section 2605(e).

64.     By committing all the above named acts as set forth in the factual statements in this complaint, Defendants have violated provisions of the Real Estate Settlement Procedures Act and also by failing to allow a proper amount of time for an

investigation prior to their fraudulent foreclosure.

65.     Defendants are also liable for not making proper disclosures at the time the

closing occurred.

WHEREFORE, Plaintiff requests this Honorable Court to enter judgment

in their favor against Defendants for improper application of mortgage payments

and for actual statutory treble and for punitive damages, attorney fees and costs

along with any other relief this Court deems just and proper.

## COUNT IX

### VIOLATIONS OF THE FAIR HOUSING ACT

### 42 U.S.C. 3601

65..    Plaintiff adopts by reference the preceding paragraphs.

66.     Defendants are servicers of a federally related mortgage loan within the meaning

of the Real Estate Settlement Procedures Act (RESPA), 12 USC Section 2605.

67.     Prior to the filing of this lawsuit, the Plaintiffs served upon Defendants a

Qualified Written Request pursuant to the Real Estate Settlement Procedures Act

("RESPA"). A copy of the Qualified Written Request sent to Plaintiff is attached

hereto as Exhibit "A".

68.     On September 9th, 2009, Defendants were sent a letter of noncompliance under

RESPA and the Federal Fair Housing Act, which was never responded to.

69.     42 U.S.C. 3613 states:

"An aggrieved person may commence a civil action in an appropriate US

district court or State court not later than 2 years after the occurrence or the

14

termination of an alleged discriminatory housing practice, or breach of a

conciliation agreement entered into under this Title...."

70    42 U.S.C. 605 covers discriminatory lending practices which further defined

under the Code of Federal Regulations; CFR 100.120, CFR 100.125 AND CFR

100.130.

71.    That under the above named statutes and regulations the Defendants have

committed the following acts or practices:

While at the closing, Plaintiff was not informed of various charges that later were

to be assesses against him, he was never advised of the nature of the variable rate

loan, he was never advised of his recission rights, he was never advised of the

split charges and excess interest rate differentials split between the broker and the

original lender, he was not informed of various costs that were over inflated as

shown on the HUD settlement statement including: origination fees, appraisal

fees, document preparation fees, broker processing fees  lender underwriting

fees, and a  yield to premium adjustment. Furthermore, the Plaintiff was

discriminated against by taking members of his class and applying for non-

affordable loans from on application that falsely used inflated income to conceal a

higher debt to income ratio.

## COUNT X

## VIOLATION OF TRUTH IN LENDING

72.    Plaintiff adopts by reference all the preceding paragraphs.
73.
74.    As set forth more fully below, Defendant, (Predator Lender), regularly and
charges                                        exorbitant fees in connection with its
second mortgage loans.

15

74. This is an action pursuant to the Truth in Lending Act ("TILA"), codified at 15 U.S.C. Sec 1601 et. seq. TILA was enacted by Congress in 1968 as Title I of the Consumer Protection Act. TILA is a remedial statute that is to be construed liberally.

75. The Federal Reserve Board adopted Regulation Z shortly after enactment of the 1968 Act. Regulation Z can be found at 12 CFR 226.1 et seq. The purpose of TILA and Regulation Z is to promote the informed use of credit and level the playing field between competing creditors.

76. The law is designed to protect consumers in credit transactions by requiring the clear disclosure of the key terms and costs of the lending transaction. The goal of TILA is to enable the consumer to understand what their actual costs of borrowing will be on a given transaction.

77. TILA intends to provide consumers with an informed understanding of the cost of credit by forcing lenders to make certain disclosures.

78. Additionally, TILA provides for material disclosures under 15 U.S.C. Sec. 1601 (u), which includes "the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number of and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by [15 U.S.C. Sec. 1639 (a).]".

79. Additionally, when a consumer is using their home as collateral for a loan, the TILA provides the consumer with the right to cancel non-purchase money loans that include liens on their homes. See 15 U.S.C. Sec. 1635 (a).

16

80.  The right to cancel may be exercised until midnight of the third business day after the loan is consummated. This right may be extended up to three years if the consumer borrower is not provided accurate material disclosures. See 15 U.S.C. Sec. 1635 (f).

81.  In 1994, Congress added to the TILA by enacting the Home Ownership Equity Protection Act, 15 U.S.C. § 1639, ("HOEPA"). HOEPA was enacted by Congress to curb predatory lending.

82.  Congress found that several high-rate lenders were using non-purchase money mortgages to take advantage of unsophisticated and low income homeowners in a "predatory" fashion. See S. Rep 103-169, 1994 U.S.C.C.A.N. 1881, 1907.

83.  HOEPA provides additional protections for consumers whose loan falls within the definition of a "High Cost Mortgage". A loan is considered a "high cost mortgage" and triggers the HOEPA requirements if one of two tests is met. The first test is whether the consumer was charged more than 8% of the "total loan amount" in points and fees. In setting the 8% bright line test Congress found that the 8% level for points and fees was well above the industry average. The 8% trigger was to "prevent unscrupulous creditors from using grossly inflated fees and charges to take advantage of unwitting consumers". S. Rep. 103-169, 1994 U.S.S.C.A.N. 1881, 1908. The second test is whether the APR exceeds the comparable treasuries rate by more than 10%.

84.  At least three business days prior to closing a "high cost" loan, Lenders are required by 15 U.S.C. Sec. 1639 to provide the following written disclosures in conspicuous type size:

(a) the annual percentage rate;

17

(b); the amount of the monthly payment;

(c) that the Consumers were not required to complete the transaction merely

because they received the disclosures or that they signed a loan application;

(d) that the loan would result in a mortgage against their home; and

(e) that they could lose their home, any money they have put into it, if they did not

meet their obligations. The form used by Predator for the disclosures required by

HOEPA fails to set out the disclosures in conspicuous type size. The form used by

a "Predator Lender", for the disclosures required by HOEPA also erroneously and

deceptively includes 2 references to the loan interest rate.

85The minimum Debt to Income for this transaction based on the facts stated in the

Plaintiff's original qualified written request is 158.15% which place the borrower into a

non-affordable mortgage program. The deceptive lending Practices stated herein have

potentially placed the borrower in a position to lose his home that was no disclosed in the

Truth in Lending document or other related documents.


WHEREFORE, Plaintiff prays this court grant the following relief:

a.  A judgment enforcing the election to recind the transaction and granting relief

he is entitle to under 15 U.S.C. Section 1635.

b.  An award of statutory damages under 15 U.S.C. Section 1640 for Predator's

failure to timely respond to any notices.

Anwar Seman sworn, deposes and says that he is the Plaintiff in the above captioned
action, that he has read the foregoing complaint, know the contents thereof, and that the
same is true of his own knowledge, except as to those matters stated to be upon
information and belief, and as to those they believe them to be true.

18

(e) that they could lose their home, any money they have put into it, if they did not meet their obligations. The form used by Predator for the disclosures required by HOEPA fails to set out the disclosures in conspicuous type size. The form used by a "Predator Lender", for the disclosures required by HOEPA also erroneously and deceptively includes 2 references to the loan interest rate.

85The minimum Debt to Income for this transaction based on the facts stated in the Plaintiff's original qualified written request is 158.15% which place the borrower into a non-affordable mortgage program. The deceptive lending Practices stated herein have potentially placed the borrower in a position to lose his home that was no disclosed in the Truth in Lending document or other related documents.

WHEREFORE, Plaintiff prays this court grant the following relief:

a.  A judgment enforcing the election to recind the transaction and granting relief he is entitle to under 15 U.S.C. Section 1635.

b.  An award of statutory damages under 15 U.S.C. Section 1640 for Predator's failure to timely respond to any notices.

Anwar Seman sworn, deposes and says that he is the Plaintiff in the above captioned action, that he has read the foregoing complaint, know the contents thereof, and that the same is true of his own knowledge, except as to those matters stated to be upon information and belief, and as to those they believe them to be true.

Respectfully submitted,

Michael Reynolds (P28540)

18

03/01/2010  14:12 FAX  44054666          PNC_BANK                                      ☒ 023/033

Law Offices of Michael Reynolds
Attorney for Plaintiff
24624 Hathaway Street
Farmington Hills, MI 48335
 (248)536-5030


Dated: _____ 1 - 22-2010

03/01/2010 14:12 FAX  44054666          PNC_BANK                                    ☑ 024/033



# ZIMMERMAN & ASSOCIATES

### ATTORNEYS AT LAW

Wednesday, September 9, 2009

Writer's Direct Line: 954.202.7794
Private Fax: 954.678.3009
Email: jennifer@zimmermanlaw.com

Via Certified Mail #7009 2250 0001 1589 6113
Return Receipt Requested

Washington Mutual Bank
PO Box 78148
Phoenix, AZ 85062-8148

Re:   Discriminatory and Predatory Loan Claim
      Borrower: Anwar Seman ("Borrower")
      Last 4 Digits of Borrower SSN: 6310
      Lender on HUD-1: Washington Mutual Bank ("Lender")
      Loan #:  01-396-4586313438 (1st) / 3011320284 (2nd) ("Loan")
      Property Address: 6972 Apple Blossom Trail, West Bloomfield, MI  48322
      ("Property")

Dear Sir or Madam:

This firm represents the Borrower in connection with the Loan.

Without limiting or prejudicing any of our client's rights or remedies, all of which are
expressly reserved, this letter is a good faith attempt to settle and compromise our client's
claims for discrimination, predatory lending, and other material violations of law against
you, the Lender, and other persons associated with the Loan.  In addition, this letter is a
demand for resolution.  This is not a confidential communication protected under the
rules of settlement disclosures and correspondence.

Based on a forensic audit of the Loan conducted by Loan Compliance Advisory Group,
LLC, it is apparent that the Loan transaction violates multiple federal and state laws,
including, but not limited to, the Real Estate Settlement Procedures Act ("RESPA"), the
Truth in Lending Act, the Fair Housing Act and the Equal Credit Opportunity Act.

Among other violations of our client's rights:

1.  The audit reveals significant mortgage compliance violations involving predatory,
    deceptive, discriminatory and unfair lending and servicing practices.

2.  The audit shows the Loan was predatory in that Lender denied our client a loan
    that our client had the ability to repay.

---

2400 East Commercial Boulevard, Suite 820, Fort Lauderdale, FL 33308
www.ZimmermanLaw.com • Tel: 954.202.7440 • Fax: 954.678.3088

03/01/2010 14:13 FAX  4405466(          PNC_BANK                         ☑025/033

*Thursday, September 10, 2009*
*Page 2 of 3*

---

3. The Loan was made because of discrimination based on one or more of the following protected basis: race, national origin, sex, color, disability or age.

4. Multiple parties associated with the Loan were involved in the discriminatory conduct against our client, including, but not limited to, you, Lender, loan officers, mortgage brokers, mortgage originators, mortgage bankers, appraisers, settlement agents, investors, trustees, private mortgage service providers, credit default swap providers, custodians of documents, beneficiaries to the mortgage or deed of trust, and any and all other parties to a securitized trust or holder entity to which the Loan purportedly applies.

Upon discovering these violations, our client sent you a Qualified Written Request ("QWR") and QWR Addendum ("Addendum"), i.e. RESPA Form 69, along with documents supporting improper acts associated with the Loan. Copies were sent to the Lender and, if applicable, the originating mortgage broker for the Loan. You accepted delivery of these documents on November 3, 2008.

Under RESPA, you were required to acknowledge receipt within 20 business days and also to attempt to resolve the issues raised in the QWR and the Addendum within 60 business days. However, since you failed to make any such attempt, and since there has been no good faith effort to provide our client with a resolution offer or other proper or complete response regarding the Loan violations, our client filed complaints with the Office of the Comptroller of the Currency, the Office of Thrift Supervision, the Federal Reserve Board, and the Federal Trade Commission.

Despite the potential magnitude of our client's claims, our client is willing to settle this matter by entering into a Standstill or Settlement/Resolution Agreement binding on you, Lender, the holder and/or owner of our Borrower's promissory note, by no later than 5 business days after your certified receipt of this letter, on the following terms:

1. You, the Lender, holder and/or owner of the Borrower's promissory note shall immediately cease all collection activity, including foreclosure and eviction; cease and remove any negative credit reporting regarding this predatory loan; and release our client of the obligation to make any payments relating to mortgage liens against the Property under the note and mortgage.

2. You, the Lender, holder and/or owner of the Borrower's promissory note shall place our client into a fully affordable mortgage repayment plan based on the fact the Debt to Income (DTI) ratio for this Loan exceeded 50% at time of settlement. The Industry underwriting standards allow a maximum ratio of housing expense to income of 31% or less.

3. You, the Lender, holder and/or owner of Borrower's promissory note shall provide an acceptable resolution offer to restructure/recast the note secured by a

*Thursday, September 10, 2009*
*Page 3 of 3*

mortgage or deed of trust. The acceptable resolution offer shall include a change in the current loan program based on non-affordability as stated in the preceding paragraph. The restructured/recast note shall reflect a fully amortizing, fixed-rate loan, with a combined mortgage principal balance of not more than $315,000 (90% of the BPO/CMA furnished by our client), a reduction in monthly payment, a new payment term, and a modified mortgage maturity date.

4. You, the Lender, holder and/or owner of Borrower's promissory note shall provide our client with the servicing log, the life of loan history, and proof of debt validity. In addition, pursuant to 15 U.S.C § 1641, Liability of an Assignee, you shall disclose the true and current ownership of the Borrower's promissory note and mortgage, as previously demanded in the QWR/QWR Addendum referenced above.

Our firm and Loan Compliance Advisory Group, LLC have presented you and your representatives with proper notice of the issues described in this letter numerous times. In each instance, we gave you ample time to respond, yet you have failed to do so.

If you are interested in discussing settlement, please contact us immediately. If we do not hear from you or if we are unable to resolve this matter within 5 business days after your receipt of this letter, we will consider this a denial of our client's request to restructure/recast this predatory loan and our client will feel at liberty to take such further action as our client may deem appropriate, without courtesy of further notice to you.

This letter does not purport to be a full statement of our client's position in this matter, and it is written without limitation of or prejudice to any of our client's rights or remedies, all of which are expressly reserved.

Sincerely,

*Jennifer Casso*

Jennifer DeMarzo Casso

cc:     Anwar Seman
        Office of the Comptroller of the Currency
        Office of Thrift Supervision
        Federal Reserve Board
        Federal Trade Commission
        National City Home Equity (Certified Mail No. 7006 0810 0006 1534 3228)
        Loan Compliance Advisory Group
        Michigan Assets
        HUD
        Trustee
        Kurt D. Zimmerman, Esq.




**LOAN COMPLIANCE**
· ADVISORY GROUP LLC                    Concord Pike • Wilmington, DE 19803
                                        800-529-7184
                                        web: www.loancomplianceadvisorygroup.com
                                        email: admin@loancomplianceadvisorygroup.com

## Official Qualified Written Request

~~SENT: 10/30/2008~~ – U.S. Postal Service Certified Mail Return Receipt # <u>7008 1830 0000 7938 6242</u>

TO:  Washington Mutual Bank (1st)                    Date of Written Request: 10/30/2008
     P.O. Box 78148
     Phoenix, Arizona 85062-8148

ATTN: Customer Service/Consumer
Department: Qualified Written Request

---

CC:  National City Home Equity (2nd)        CC:   Apex Mortgage
     P.O. Box 856153                                         2550 Corporate Exchange
     Louisville, Kentucky 40285-6153                         Columbus, Ohio 43231

---

I am writing because:

Of all the issues described in the attached Complaint with Exhibits attached.

I understand that under Section 6 of RESPA you are required to acknowledge my request within 20 business days and must try to resolve the issue within 60 business days.

RESPOND TO: <u>Joseph Bisogno</u> – Senior Vice President of Loan Compliance Advisory Group
On Behalf of *Anwar Seman* (Borrower Certification/Authorization Form Enclosed)
Phone Number: (888) 883-5224        Email: <u>JBisogno@loancomplianceadvisorygroup.com</u>

Social Security Number:

Property Location: 6972 Apple Blossom Trail, West Bloomfield, Michigan 48322

Loan Account Number: <u>01-396-4586313438</u> (1st)  <u>3011320284</u> (2nd)

Loan Number: Per Settlement Statement: <u>3011320284</u> (1st)  <u>0005623330</u> (2nd)

Settlement Agent: Trident Title Agency, Inc. Located in Columbus, Ohio 43231
File Number: <u>39194-MI</u>

Page 1 of 4

**LOAN COMPLIANCE**
· A D V I S O R Y  G R O U P  LLC



/ Concord Pike • Wilmington, DE 19803
800-529-7184

www.loancomplianceadvisorygroup.com
admin@loancomplianceadvisorygroup.com

**DESCRIPTION OF THE COMPLAINT**: Deceptive Lending Practices Stated Herein:

*Non-Disclosed Broker, Lender and 3rd Party Fees.* Per Enclosed Settlement Statements (Exhibit 101 + 101A) showing a settlement Date of 10/06/206 (1st) and 06/07/2007 (2nd), Anwar Seman entered into a 1st mortgage with Washington Mutual Bank (Lender) and a 2nd mortgage with National City Home Equity (Lender). The enclosed Settlement Statements show a Line 801 Loan Origination Fee paid to Apex Mortgage in the amount $4,000.00, a Line 803 Appraisal Fee paid to Elite Appraisal (POC) in the amount of $450.00, a Line 805 Funding Review Fee paid to Washington Mutual in the amount of $455.00, a Line 810 Processing Fee paid to Apex Mortgage in the amount of $495.00, a Line 811 Yield Spread Premium paid (POC) to Apex Mortgage in the amount of $5,000.00, and a Line 809 (from the 2nd) Mortgage Broker Fee paid to Liberty Home Loans (POC) in the amount of $3,000.00. These Fees totaling $13,400.00 were never properly disclosed to the Borrower. Mortgage Lenders have an obligation to provide a Good Faith Estimate of the Closing Costs that will be due at time of settlement. This Estimate is required per RESPA (Federal Real Estate Procedures Act).

Enclosed find tax documents for 2005 + 2006 showing the borrower's average monthly income to be $6,200.62.

Enclosed find (Exhibit 202 + 202A) the Uniform Residential Loan Applications (form 1003) for this transaction prepared by interviewer Rob Lieb of Apex Mortgage Services, LLC and unlisted of National City Bank. This application was taken via telephone interview. To determine if all required state and federal disclosures were sent to borrower within 3 days of application, please provide a copy of the borrower's credit report. The credit report date is needed to determine the real application date and if disclosures were timely. The interviewer placed an *inflated* figure of $22,000.00 as the borrower's total monthly gross income on this enclosed 1003. The interviewer also placed a figure of $5,946.23 (Exhibit 202) and $1,645.36 (Exhibit 202A) as the proposed combined monthly housing expenses. The interviewer also placed a figure of $2,215.00 (Exhibit 202) as Total Monthly Payments for other monthly recurring liabilities.

The minimum Debt to Income (DTI) for this transaction is 158.15%. The borrower was placed into a *non- affordable* mortgage program. This Deceptive Lending Practice has potentially placed the borrower in a position to lose his home.

Enclosed find (Exhibit 303A) the Federal Truth In Lending (TIL) Disclosure Statements for this transaction prepared by National Home Equity dated 06/07/2007 (same date as closing for the 2nd). Please explain.

All of the documents requested and stated herein are needed to determine if disclosures were provided to the borrower within timeline guidelines.

**LOAN COMPLIANCE**
· A D V I S O R Y   G R O U P   LLC



7 Concord Pike ° Wilmington, DE 19803

800-529-7184

www.loancomplianceadvisorygroup.com
admin@loancomplianceadvisorygroup.com

**A)** The Borrower has authorized our group to file complaints with several regulatory groups, including but not limited to the Office of Consumer and Regulatory Affairs in Washington, DC, the Office of Thrift Supervision, the Federal Trade Commission (FTC), the Federal Reserve Board, and State Banking Department. The Borrower was advised that Washington Mutual Bank, National City Home Equity, and Apex Mortgage should be given the time allotted by RESPA (Federal Real Estate Settlement Procedures Act) to review and investigate the facts contained herein, prior to sending out complaints regarding the Deceptive Lending Practices stated herein to the regulatory groups listed within this Official Written Request. The borrower was also advised to continue making monthly payments during this process.

## PROPOSED PRELIMINARY RESOLUTIONS:

1) Provide validity and proof of debt and the name of the original creditor.
2) If determined that disclosures were not provided to the borrower timely and properly, refund all broker/lender and 3rd party feed listed in the (800) fee section of the enclosed settlement statement totaling $13,400.00 to the borrower.
3) Provide proof of debt and the name of the original creditor.
4) Provide the Loan Sale and/or Servicing Agreements for this transaction.
5) Provide name and address of Note holder.
6) Please investigate all the facts stated herein and provide the borrower with options to have this loan restructured to a fully amortizing fixed rate *affordable* loan, based on income documents provided by the borrower and stated herein.
7) Provide the underwriting guidelines used to determine loan program affordability.
8) Provide the *Borrower* with copies of all signed closing and disclosure documents in your possession, including the residential loan applications signed by the borrower for this transaction.
9) Provide the final HUD-1 Settlement Statement.
10) Provide a signed and executed copy of the mortgage and note.
11) Provide the completed appraisal used for this transaction.
12) Provide a copy of Borrower's Credit Reports.
13) Provide proof of mailing for all disclosures on this transaction.
14) Provide the Lenders closing instructions to the settlement agent.
15) Provide the income documentation used for this transaction.
16) Provide the *Borrower* with a breakdown of all payments received to date from Lender since the inception of this mortgage loan, detailing amounts applied to principal and/or interest.
17) Provide an accounting detailing all late fees, *negative amortization* and any/all costs associated with this transaction.
18) Provide a copy of the Broker/Lender Agreement for this transaction.
19) Provide a complete detailed breakdown regarding escrows.
20) Provide a copy of all disbursements (to include all 3rd party invoices) at settlement.
21) Provide copy of Lenders Private Mortgage Insurance Policy, if used for this transaction.
22) Provide copy of Credit Default Swaps (CDS) contract if used for this transaction.
23) Section 6 of RESPA also provides for damages and costs for individuals in circumstances where servicers are shown to have violated the requirements of Section 6.

03/01/2010 14:14 FAX 4405486(       PNC_BANK       ☑030/033



**LOAN COMPLIANCE**
**- ADVISORY GROUP LLC**

07 Concord Pike ° Wilmington, DE 19803
800-529-7184
web: www.loancomplianceadvisorygroup.com
email: admin@loancomplianceadvisorygroup.com

The Real Estate Settlement Procedures Act (RESPA) is a consumer protection statute, first passed in 1974. One of its purposes is to help consumers become better shoppers for settlement services. Another purpose is to eliminate kickbacks and referral fees that increase unnecessarily the costs of certain settlement services. RESPA requires that borrowers receive disclosures at various times. Some disclosures spell out the costs associated with the settlement, outline lender servicing and escrow account practices and describe business relationships between settlement service providers.

RESPA also prohibits certain practices that increase the cost of settlement services. Section 8 of RESPA prohibits a person from giving and accepting any thing of value for referrals of settlement service business related to a federally related mortgage loan. It also prohibits a person from giving or accepting any part of a charge for services that are not performed. Section 9 of RESPA prohibits home sellers from requiring home buyers to purchase title insurance from a particular company.

Generally, RESPA covers loans secured with a mortgage placed on a one-to-four family residential property. These include most purchase loans, assumptions, refinances, property improvement loans, and equity lines of credit. HUD's Office of Consumer and Regulatory Affairs, Interstate Land Sales/RESPA Division is responsible for enforcing RESPA.

**ATTACHMENTS:**
**SETTLEMENT STATEMENTS – EXHIBITS 101 + 101A**
**UNIFORM RESIDENTIAL LOAN APPLICATIONS – EXHIBITS 202 + 202A**
**WA MU HOME LOAN + NATIONAL CITY MONTHLY STATEMENTS**
**BORROWER'S 2005 + 2006 TAX DOCUMENTS**
**FEDERAL TRUTH IN LENDING DISCLOSURE – EXHIBIT 303A**
**RESPA OFFICIAL QUALIFIED WRITTEN REQUEST**
**BORROWERS CERTIFICATION/AUTHORIZATION FORM**
**EXHIBITS OF DOCUMENTED FINDINGS**
**CERTIFIED MAIL RECEIPT COPY**

I understand that under Section 6 of RESPA you are required to acknowledge my request within 20 business days and must try to resolve the issue within 60 business days.

Joseph Bisogno                10/30/2008
Joseph Bisogno                   Date
*Senior Vice President*
**Loan Compliance Advisory Group**
**On Behalf of** *Anwar Seman*
*Borrowers Certification/Authorization Enclosed*

## Borrower's Authorization

### Authorization to Release Information

I/we, the undersigned borrower(s), certify the following:

1.  I/we have engaged Zimmerman & Associates and Loan Compliance Advisory Group LLC ("LCAG") to act on our behalf regarding our Home Mortgage Loan(s) described in documents I have provided to Michigan Assets Recovery Services Company and further described in a QWR and Addendum to be prepared by one or both of these firms. I/we authorize both Zimmerman & Associates and LCAG to perform a Forensic Mortgage Loan Audit/Document Review/Report of specified closing documents. The documents that I have submitted to Zimmerman & Associates and LCAG to review were the only ones provided to me/us at time of settlement.

2.  I/we authorize the brokers/lenders/servicing agencies/settlement agents (hereinafter referred to as lender(s)) to provide Zimmerman & Associates and LCAG, any and all information and documentation that they request. Any request from Zimmerman & Associates and LCAG should be considered the same as a request or demand from the undersigned.

3.  A copy of this signed authorization maybe accepted as original.

4.  The lender's prompt reply to Zimmerman & Associates and/or LCAG is appreciated.

5.  I/we authorize and direct my lender to send all correspondence to Zimmerman & Associates at 2400 E. Commercial Blvd., Suite 820, Ft. Lauderdale, FL 33308 (Telephone Number: 954-202-7440) and Loan Compliance Advisory Group LLC at 2207 Concord Pike, Wilmington, Delaware 19803 (Telephone Number: 888-883-5224).

6.  I/we authorize Zimmerman & Associates and LCAG to send my lender(s) a Qualified Written Request (QWR) and to also provide lender(s) with "Documented Findings" based on data that I/we have provided to Zimmerman & Associates and LCAG relating to any possible violations of the Real Estate Settlement Procedures Act (RESPA) or Truth In Lending Act (TILA), deceptive lending practices including facts that might be found to constitute mortgage fraud, appraisal fraud and or no-affordability related issues, non-disclosed and/or excessive Broker/Lender/3rd Party Fees, mortgage-related compliance issues and/or servicing issues as stated herein.

7.  I/we were advised by Zimmerman & Associates that during this process we should attempt to make our monthly mortgage payments. In the event that we are unable to make payments; I/we will send lender(s) noted in QWR, a Hardship Letter certified mail/return receipt detailing circumstances.

8.  I/we authorize Zimmerman & Associates and LCAG to negotiate a "Resolution Settlement" on our behalf with the lender(s). I/we will make the final decision to accept or reject any resolution offered by lender(s).

SEP-03-2009(THU) 14:38   Michigan Asset Recovery        (FAX)2486807301          P. 004/012

9. Failure to comply with this grant of authority or any reasonable request by the parties acting on my behalf and listed on the Qualified Written Request (QWR) with documented findings of Deceptive Lending Practices may result in immediate legal action and equitable remedies, and may include demand for rescission, and may include a demand for recovery of attorney fees, costs and all out-of-pocket expenses in connection with the review, audit, demand, claim refund or collection of damages.

Sincerely,

_Anwar S Seman_  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   9-3-09
Borrower Signature        Social Security Number        Date

Printed Name  _Anwar Seman_

X _____
Borrower Signature        Social Security Number        Date

Printed Name _____

X _____
Borrower Signature        Social Security Number        Date

Printed Name _____

X _____
Borrower Signature        Social Security Number        Date

Printed Name _____

NOTARIZATION: The above signatories produced identification, which is on file with me, a duly authorized Notary Public, and he/she/they signed the above in my presence.

My Commission Expires: _4/27/2015_   State of _michigan_

Notary Public:

_____   _9/3/2009_
                                        Date

MARCUS ROLF
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF OAKLAND
MY COMMISSION EXPIRES APRIL 27, 2015
Acting in the County of

**National City.**

**National City Bank**
P.O. Box 5570
Cleveland, OH 44101-0570

*39 64586 313438*

October 5, 2009

Zimmerman & Associates Attorneys at Law
2400 East Commercial Blvd, Suite 820
Fort Lauderdale, FL 33308

Re: Correspondence on behalf of Anwar Seman regarding "Qualified Written Request"
(QWR).

Dear Sir or Madam:

National City received your correspondence on the above referenced customer which you
have termed a "Qualified Written Request". National City has investigated this matter
and provides the following response:

QWR applies to "mortgage servicing loans" (as defined in Regulation X, which
implements the Real Estate Settlement Procedures Act). Because Regulation X excludes
subordinate lien home equity loans from the operation of the QWR provisions, this loan
is not a mortgage servicing loan.

Accordingly, the complaint letter sent on behalf of Mr. Seman is not a proper qualified
written request and National City is not required to respond to it. Without waiving in any
respect the forgoing position, National City further denies any and all allegations in the
letter that National City violated any law or regulation referenced. National City
disclaims any responsibility to provide any further response to this matter.

Sincerely,

Default Management
Lending Services
P.O. Box 5570
Cleveland, OH 44101-0507

Notice: See Reverse Side for Important Information

Menu - PNC One PNC - Parkhurst Dining Services, Inc                                    Page 1 of 1



**PNC - Parkhurst Dining Services, Inc Menu**

## Monday, March 08, 2010

| | | |
|---|---|---|
| Beef Barley | *Soup of the Day* | |
| Baked Pork Chops and Vegetables | *Parkside Diner* | $5.75 |
| Chicken & Peaches 336 cal, 13g fat, 1g fiber, 192mg sodium | *Whole Body* | $6.50 |
| Turkey and Cheddar Sandwich | *East Street Deli* | $4.39 |
| Pepperoni Lover\'s Pizza | *Pepperazzi* | $4.39 |
| Hawiian Chicken Sandwich | *Sequoia Grill* | $4.95 |

## Tuesday, March 09, 2010

| | | |
|---|---|---|
| Cream of Chicken | *Soup of the Day* | |
| Chicken in Red Wine Sauce | *Parkside Diner* | $5.95 |
| Balsamic Glazed Tuna Tuna steak drizzled with a balsamic glaze. | *Whole Body* | $6.50 |
| Sausage Pizza | *Pepperazzi* | $4.39 |
| Reuben Sandwich | *Sequoia Grill* | $5.95 |

## Wednesday, March 10, 2010

| | | |
|---|---|---|
| Ham & Navy Bean | *Soup of the Day* | |
| Chicken with Peppers & Tomatoes | *Parkside Diner* | $5.50 |
| Horseradish Crusted Salmon | *Parkside Diner* | $6.75 |
| Herb-Orange Pork Tenderloin Cal 176, Fat 6g, Fiber 0g, Sodium 118mg | *Whole Body* | $5.95 |
| Pretzel Sandwich | *East Street Deli* | $4.99 |
| Mushroom Pizza | *Pepperazzi* | $4.39 |
| Steak or Chicken Salad Grilled steak or chicken served on a bed of lettuce with cheese, tomatoes, cucumbers, and French fries. Topped with ranch or Italian dressing. | *Bravisimo* | $6.25 |
| Cilantro Lime Chicken Sandwich Mexican marinated grilled chicken breast served on a Kaiser roll | *Sequoia Grill* | $4.95 |

## Thursday, March 11, 2010

| | | |
|---|---|---|
| Cream of Mushroom | *Soup of the Day* | |
| Chicken with Samfaina | *Parkside Diner* | $5.95 |
| Stuffed Cabbage Ground beef seasoned with salt and pepper then mixed with rice. Topped with tomato sauce and oven roasted. | *Parkside Diner* | $5.50 |
| Black Bean Cakes 120 cal, 3.5g Fat, 14g Fiber, sodium 120 mg | *Whole Body* | $4.35 |
| Buffalo Chicken Salad Sandwich | *East Street Deli* | $4.39 |
| Chicken, Bacon Ranch Pizza | *Pepperazzi* | $4.39 |
| Hot Sausage Sandwich Pittsburgh made hot sausage smothered with peppers, onions and tomato sauce | *Sequoia Grill* | $4.95 |

## Friday, March 12, 2010

| | | |
|---|---|---|
| Tomato Dumpling | *Soup of the Day* | |
| Breaded Fish Sandwich Lightly breaded Pacific cod served on a hoagie roll with American cheese, lettuce and tomato. Accompanied with tartar and cocktail sauces. | *Parkside Diner* | $6.00 |
| Marinated Pork Loin with Roasted Red Peppers | *Parkside Diner* | $5.95 |
| Ham, Salami and Roasted Red Peppers on Ciabatta | *East Street Deli* | $4.99 |
| White Pizza | *Pepperazzi* | $4.39 |
| Grilled Salmon Sandwich Salmon fillet grilled to order and served on a Kaiser roll. | *Sequoia Grill* | $5.25 |

03/01/2010  14:10 FAX  4405466\          PNC_BANK                            @ 002/033



**MICHIGAN LOAN COMPLIANCE ADVISORY GROUP CO.**
625 S. BIG BEAVER, STE. 205 TROY, MI 48038



CERTIFIED MAIL

7007 3020 0000 2792 9268

7007 3020 0000 2792 9268



2174

National City
1900 East Ninth Street
Cleveland, OH 44114